[Cite as *In re G.G.*, 2022-Ohio-3821.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE G.G., ET AL.                    :

Minor Children                        :                    Nos. 111322 and 111324

[Appeal by S.L.-G., Mother]           :

                                      :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 27, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21908592 and AD21908593

---

### *Appearances:*

Tyresha Brown-O'Neal and Lon'Cherie' Billingsley, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

---

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} S.L.-G. ("appellant") appeals from the trial court's February 2022 judgments granting temporary custody of her minor children S.H. and G.G. to appellee, the Cuyahoga County Division of Children and Family Services

("CCDCFS" or "the Agency").  After careful review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} E.H. is S.H.'s father.  L.G. is G.G.'s father.  Appellant and L.G. were married at all relevant times.  Neither father has appealed.[1]

{¶ 3} The record demonstrates that for several days in June 2021 appellant left S.H. and G.G. home alone with an unidentified 15-year-old relative while she and L.G. stayed at a hotel.  At the time, S.H. was 13 years old and G.G. was nine years old.  L.G. would briefly stop by the house in the morning to bring breakfast for the children.  They also got food from the 15-year-old relative, who had a debit card and would "door dash" food for them.  The record reflects that the children went to the movies on their own.

{¶ 4} A couple of days into the children's stay alone, G.G.'s paternal grandmother picked her up and G.G. stayed with the grandmother.

{¶ 5} A few days later, S.H. contacted her father (E.H.) and asked him to pick her up from appellant's home.  Later that same day, the police were called to E.H.'s residence because appellant was attempting to get S.H. from E.H.'s home and E.H. would not allow S.H. to go with her.

---

[1] The fathers were served by the magistrate.

**{¶ 6}** The police initially talked to E.H. upon responding to the residence. E.H. told the police that he got S.H. from appellant's home after S.H. texted him at 5:00 a.m. that day asking him to get her because she did not feel safe there.

**{¶ 7}** The police spoke with S.H. who told them that appellant was abusive and left her and G.G. alone while she went to a hotel. S.H. indicated that she felt safe and comfortable at her father's home.

**{¶ 8}** After speaking with E.H. and S.H., the police spoke with appellant who expressed her desire to have S.H. return home. The police attempted to "get her side of the story," during which she accused E.H. of engaging in criminal activity. Appellant told S.H. that she was going to beat her when they got home. The police took S.H. to CCDCFS.

**Initial Complaint**

**{¶ 9}** On June 28, 2021, the Agency filed a complaint and motion for predispositional temporary custody. Mother and G.G.'s father, L.G., appeared at that time and requested an attorney. The court continued the hearing for a day so that counsel could be appointed for appellant and the fathers. Appellant agreed that she and L.G. were a "united front" and could share counsel; the trial court stated that it would appoint separate counsel for E.H. At the time of the filing, S.H. was in her father's custody and G.G. was in appellant's custody.

**{¶ 10}** The emergency predispositional custody hearing was held the following day, June 29, 2021. Appellant appeared at the hearing with appointed counsel, and E.H. was present with his appointed counsel. Appellant's appointed

counsel indicated that she represented appellant and that representing L.G. too would be a conflict of interest. Appellant indicated that L.G. was present, but was in his car doing work and because she had a flexible schedule she was "standing in" for both of them. The magistrate said that was L.G.'s choice and they were going to proceed without him, but appellant's attorney would only represent appellant because the attorney did not know L.G.'s wishes. The magistrate did not insist that contact be made with L.G. to determine his wishes or continue the hearing so that counsel could be appointed for him. However, because L.G. has not appealed, we do not address this error.

{¶ 11} Appellant ultimately indicated that she wanted to dismiss her attorney and represent herself. After determining that appellant was knowingly and voluntarily relinquishing her right to counsel, the magistrate allowed her to proceed pro se. The record demonstrates that G.G. was present with appellant at the hearing.

{¶ 12} Testimony from the agency worker established that there was a prior incidence of substantiated physical abuse by appellant against S.H. The worker further testified that the family had been involved in multi-systemic therapy, and that through S.H.'s therapist, CCDCFS was aware that "there have been excessive calls regarding [S.H.'s] ability to watch other children, meaning she wasn't supposed to be left unsupervised by herself due to her impulsivity, behaviors and her decision-making." (June 29, 2021, tr. 79). The worker further testified that S.H.'s therapist had had numerous conversations with appellant about the need for S.H. to be supervised.

{¶ 13} At the conclusion of the hearing, the trial court granted the Agency's motion for predispositional custody. The court ordered that S.H. was to remain in her father's custody and G.G., who was present, was to be turned over to CCDCFS. Appellant did not comply with the court's order; rather, she left the courthouse with G.G. The court issued arrest warrants for both appellant and L.G., G.G.'s father.

{¶ 14} In September 2021, CCDCFS dismissed its initial complaint because of its inability to achieve resolution within the statutory time frame. It refiled the complaint, which is the present case.

**Complaint at Issue**

{¶ 15} The refiled complaint is based on the same facts as the original complaint, in addition to appellant's and L.G.'s failure to comply with the court's order from the first case that G.G. be turned over to the Agency.

{¶ 16} Another predispositional emergency custody hearing was held, at the conclusion of which the trial court granted CCDCFS's motion for predispositional temporary custody and ordered that S.H. remain with her father and G.G. be relinquished to the Agency's custody. Appellant and L.G. failed to comply with the court's order, and CCDCFS filed a motion to show cause.

{¶ 17} Two hearings were held on October 4, 2021. At the first hearing, the trial court granted the Agency's motion to show cause relative to appellant's and L.G.'s failure to comply with the trial court's order to relinquish G.G. to the Agency.[2]

---

[2] L.G. was arrested in November 2021 on his outstanding warrant. He was sentenced to 30 days in jail with a purge provision if he informed the court of G.G.'s whereabouts; he failed to purge.

The court found that G.G. was in immediate risk of harm if she remained in appellant's custody.

{¶ 18} At the second hearing, E.H., S.H.'s father, stipulated to removal of S.H. from his custody and placement of the child in the predispositional custody of CCDCFS with an order prohibiting appellant from having contact with S.H. S.H. was placed with a paternal relative.

{¶ 19} On December 17, 2021, the adjudicatory hearing on the complaint was held before a magistrate. L.G., G.G.'s father, who was present with counsel, stipulated to the complaint as amended. One of the allegations L.G. stipulated to was that he and appellant resided in a hotel for five days while S.H. and G.G. were left home alone and unsupervised.

{¶ 20} A law-enforcement official testified about responding to E.H.'s home in June 2021, when the allegations came to light and the Agency worker testified about the Agency's interactions with the family. The worker also testified that as of the date of trial, December 17, 2021, and despite having "constant contact" with law enforcement, the National Center for Missing and Exploited Children, and family members, the Agency did not know G.G.'s whereabouts. The Agency was unable to verify G.G.'s enrollment in her prior or other area schools.

{¶ 21} The worker further testified about a concerning incident that occurred while S.H. was in her father's custody. Father allowed S.H. to go with appellant (in violation of the prior no contact order) to a birthday party for G.G., and appellant and S.H. had a physical altercation.

{¶ 22} Thereafter, the magistrate issued her decision adjudicating S.H. abused and neglected and G.G. neglected. Appellant filed a motion for findings of fact and conclusions of law relative to only G.G.'s adjudication.

{¶ 23} On December 21, 2021, the magistrate held the dispositional hearing. E.H. and L.G., the fathers of the children, indicated their agreement to CCDCFS's request for temporary custody.

{¶ 24} The Agency worker testified that the permanency plan for both S.H. and G.G. was reunification and a case plan had been developed for this purpose. For appellant, the case plan included services to address mental-health issues, anger management, and parenting.

{¶ 25} The children were represented by a guardian ad litem ("GAL") who recommended that both S.H. and G.G. be placed in the Agency's temporary custody.

{¶ 26} Thereafter, the magistrate issued decisions recommending that both children be placed in the Agency's temporary custody. Appellant filed objections to both decisions.

{¶ 27} In January 2022, the trial court issued findings of fact and conclusions of law relative to G.G. as had been requested by appellant.

{¶ 28} On February 1, 2022, the trial court overruled appellant's objections to the magistrate's decisions. Appellant again filed objections relative to only G.G., and the court issued its final orders placing both children in CCDCFS's temporary custody.

**Assignments of Error**

    I.       The trial court erred when it ordered mother to relinquish custody of G.G. to the Agency and subsequently issued a warrant for her arrest prior to obtaining proper service upon mother.

    II.     The trial court erred when it granted the Agency's motion for predispositional temporary custody of G.G. and S.H. where the testimony was insufficient to support a finding of an imminent danger of physical or emotional harm.

    III.    The trial court erred when it granted temporary custody of G.G. to the Agency based on insufficient evidence.

    IV.    The trial court erred when it granted temporary custody of S.H. to the Agency based on insufficient evidence.

    V.      The trial court erred when it allowed the Agency to railroad mother.

    VI.    The trial court erred when it failed to conduct an independent review of mother's objections.

**Law and Analysis**

**Service was Proper**

{¶ 29} In her first assignment of error, appellant contends that the trial court erred by ordering her to relinquish custody of G.G. and issuing an arrest warrant for her failure to comply because the court failed to obtain proper service on her prior to doing so.

{¶ 30} It is a fundamental rule of law that a court must have personal jurisdiction over a party in order to enter a valid judgment. *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). Jurisdiction can be acquired over a party in the absence of proper service. *Id.* As noted in *Goetz v. First Benefits*

*Agency, Inc.*, 9th Dist. Summit No. 18381, 1997 Ohio App. LEXIS 4632 (Oct. 15, 1997):

> "Voluntary participation in the litigation with a view to resolution of the dispute binds the parties so participating. * * * The test of whether there is sufficient participation to constitute a voluntary appearance, aside from objecting to jurisdiction, appears to be whether by the acts done in relation to the litigation the party has sought to utilize the machinery of the court in some affirmative way to serve that party's ends in the resolution of the dispute."

*Id.* at *11-*12.

{¶ 31} This court overruled an appellant's claims that the trial court had no personal jurisdiction over the matter for failure of service upon him in a situation where the appellant objected to defective service on the record, thus adequately preserving his objection, but continued with trial, giving substantive testimony and participating in the merits of the case. *Garnett v. Garnett*, 8th Dist. Cuyahoga No. 50857, 1986 Ohio App. LEXIS 7778 (Aug. 7, 1986); *see also In re Shaeffer Children*, 85 Ohio App.3d 683, 688, 621 N.E.2d 426 (3d Dist.1993) (appellant's election to appear at a permanent custody trial and participation in the merits of the trial with counsel "waives any objection to the inadequacies of the notice").

{¶ 32} Here, in relation to the initial complaint, appellant appeared at the very first hearing on June 28, 2021, requested an attorney, and informed the court that she would be contesting "anything permanent." (June 28, 2021, tr. 16.) Appellant reappeared the following day with her appointed attorney, whom she dismissed, and proceeded pro se, arguing her position on the merits of the case. (*See*

June 29, 2021, tr. 16-21). Appellant voluntarily participated in the proceedings and therefore waived any defects in service of the initial complaint.

{¶ 33} The record demonstrates that appellant absconded when the trial court issued an order after the June 29, 2021 hearing for her to relinquish custody of G.G. to CCDCFS. At the time the subject complaint was filed in September 2021, the Agency was unable to locate appellant (and G.G.). Nonetheless, counsel appeared on her behalf at the hearings and made numerous filings on her behalf; defective service was not raised.[3] Counsel's participation in the proceedings waived any defects relative to service of the refiled complaint.

{¶ 34} On this record, there is no merit to appellant's first assignment of error and it is hereby overruled.

**Predispositional Emergency Custody Granted**

{¶ 35} In her second assignment of error, appellant contends that the trial court erred by placing S.H. and G.G. in the predispositional custody of the Agency.

{¶ 36} Under R.C. 2151.33(B)(1), 2151.31(E), 2151.314(A), and Juv.R. 13, a juvenile court may grant predispositional temporary custody orders for children.

{¶ 37} Here, the predispositional temporary custody orders were issued on the following evidence. S.H. was brought to CCDCFS by the police, who responded to the home of the child's father and learned that she had been left home alone at appellant's home for several days. While the police were on the scene, appellant

---

[3] In her February 8, 2022 objections relative to the magistrate's decision as it relates to G.G., appellant potentially raised a service issue. However, at that point, after participation in the proceedings by counsel, the issue was waived.

accused S.H.'s father of engaging in criminal activity, and appellant threatened S.H. that she was going to beat her when they got home.

{¶ 38} The Agency's worker testified that the Agency's investigation revealed that appellant left both S.H. and G.G. at home alone with a 15-year-old relative while she and G.G.'s father stayed at a hotel. L.G., G.G.'s father, would briefly stop by the home in the mornings to deliver breakfast for the children. The 15-year-old relative had a debit card and would "door dash" food for them.

{¶ 39} Further, the Agency had prior involvement with the family and there was a prior incidence of substantiated physical abuse by appellant against S.H. S.H. had behavioral, impulsivity, and decision-making issues, and her therapist communicated to appellant that because of those issues S.H. needed to be supervised.

{¶ 40} This record presents sufficient evidence for the trial court's predispositional temporary custody orders. Appellant's second assignment of error is therefore overruled.

**Temporary Custody Granted**

{¶ 41} In her third and fourth assignments of error, appellant contends that the trial court's judgments ordering temporary custody of S.H. and G.G. to CCDCFS are not supported by sufficient evidence.

{¶ 42} We begin our review of these assignments of error with the recognition that the right to parent one's children is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also In re*

*Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997) ("[A] parent's right to raise a child is an essential and basic civil right.").

{¶ 43} Under R.C. 2151.353(A), when a child is adjudicated abused, neglected, or dependent, the juvenile court is authorized to order a disposition for the child that includes (1) placing the child in protective supervision, (2) committing the child to the temporary custody of the agency, (3) awarding legal custody of the child to either parent or another person, or (4) committing the child to the permanent custody of the agency.

{¶ 44} When considering these alternatives, the juvenile court is to be mindful of the stated purpose of R.C. Chapter 2151, which is to provide for the "care, protection, and mental and physical development of children." R.C. 2151.01(A). Whenever possible, the child is to remain in a family environment and the child should be separated from the child's parents only when necessary for the child's welfare. *Id.*; *see also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29. "To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit." *Id.*

{¶ 45} Moreover, in choosing among the alternative dispositions authorized by R.C. 2151.353(A), the court's primary concern remains the best interest of the child. *In re Ka.C.*, 8th Dist. Cuyahoga Nos. 102000, 102002, 102005, and 102006, 2015-Ohio-1158, ¶ 19, citing *In re S.M.*, 2d Dist. Montgomery No. 24539, 2011-Ohio-6710, ¶ 3. "A trial court has substantial discretion in weighing the considerations

involved in making the determination regarding a child's best interest[.]" *In re S.M.* at ¶ 4, citing *In re K.H.*, 2d Dist. Clark No. 2009-CA-80, 2010-Ohio-1609, ¶ 66.

{¶ 46} When reviewing a juvenile court's judgment in child custody cases, the Supreme Court of Ohio has stated that the "court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion." *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997).

{¶ 47} Among the dispositional options, "[a]n award of temporary custody to a public or private children's services agency is substantially different from an award of permanent custody, where parental rights are terminated." *In re Ka.C.* at ¶ 20. As is the case here, "the parent only loses temporary custody of a child and retains residual parental rights, privileges, and responsibilities." *Id.*, citing *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c). The parents may regain custody; it is not permanently foreclosed. *Id.*, citing *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12.

{¶ 48} Thus, "the juvenile court employs the less restrictive 'preponderance of the evidence' standard in temporary custody cases as opposed to the 'clear and convincing' standard of evidence employed in permanent custody cases." *Id.*, quoting *M.J.M.* at ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

{¶ 49} R.C. 2151.031 provides that an abused child "includes any child who * * * [b]ecause of the acts of his [or her] parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare." R.C. 2151.031(D). The trial court found S.H. to be abused. Sufficient evidence supports that finding.

{¶ 50} S.H. called her father to come get her from appellant's home because she felt unsafe. According to the law-enforcement official who responded to the father's home in June 2021, appellant threatened S.H. that she was going to beat her when they got home. Further, at a time when appellant was under court order to have no contact with S.H., she made contact and a physical altercation between the two ensued, with S.H. suffering injuries. This evidence supports the trial court's finding that S.H. was abused.

{¶ 51} R.C. 2151.03(A) provides that, a neglected child is, among other things, a child

> (2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
>
> (3) Whose parents, guardians, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well-being.

R.C. 2151.03(A)(2) and (3).

{¶ 52} The trial court here found both S.H. and G.G. neglected. Appellant left the children, who at the time were 13 and nine years of age, alone with an unidentified 15-year-old relative for a number of days, while she and one of the

children's fathers spent time at a hotel. Her oldest child, S.H., had impulsivity and decision-making issues, and appellant had been informed by S.H.'s therapist that S.H. needed to be supervised. This evidence is sufficient to support the trial court's finding that S.H. and G.G. were neglected.

{¶ 53} Finding that S.H. was abused and neglected and G.G. was neglected, the trial court was authorized to grant CCDCFS temporary custody of the children. *See* R.C. 2151.353(A). Because appellant absconded after the trial court's orders in the initial case, appellant was unavailable to engage in services to address the risks to the children. Sufficient evidence supports the trial court's decision. The third and fourth assignments of error are overruled.

**Procedural Fairness Documented**

{¶ 54} For her fifth assignment of error, appellant contends that she was "railroaded" by CCDCFS. She alleges that the proceedings were biased against her and cites five instances of the alleged bias. In her sixth assignment of error, appellant contends that the trial court failed to conduct an independent review of the magistrate's January 24, 2022 decision and just "rubber stamped" it.

{¶ 55} Appellant first contends that the proceedings were biased against her because she lacked representation at the lengthy June 29, 2021 predispositional custody hearing. The record demonstrates that the day before, on June 28, 2021, appellant appeared before the trial court and requested an attorney. Appellant appeared at the June 29 hearing with her assigned counsel and at the beginning of the hearing informed the court she wished to proceed on her own. The court

admonished her about doing so, but appellant insisted, telling the court that she worked for an attorney. Further, the hearing was lengthy in large part because the trial court gave appellant time to present her case and afforded her flexibility with the Rules of Evidence and general court procedure (often over objection from the Agency's attorney). The court noted, for example, that appellant's opening statement was approximately 50 minutes long. Appellant opted to represent herself; she was not railroaded into doing so.

{¶ 56} Appellant next claims that the trial court "denied or overruled every motion" she filed. Assuming for the sake of argument that is true, without Appellant referencing to specific motions and the alleged error or abuse of discretion, there is nothing for us to review in this regard. *See* App.R. 16(A)(7).

{¶ 57} Appellant's third claim under her fifth assignment of error and the issue in her sixth assignment of error is that "the trial court engaged in a pattern of rubbing stamping the magistrate's decisions."

{¶ 58} According to appellant, it was impossible for the trial court to have conducted an independent review of the magistrate's decision in relation to her December 2021 objections filed because she had requested findings of fact and they had not yet been issued by the magistrate at the time the trial court overruled her objections.

{¶ 59} We initially note that appellant requested findings of fact only relative to G.G.; she did not request them relative to S.H. Appellant's argument on this issue

therefore has no relevance on the case involving S.H., in whose case the trial court ruled on appellant's objections nearly a month after they were filed.

{¶ 60} We next note that the trial court granted appellant's request for a transcript for purposes of her objections and directed that appellant "is hereby ordered to pick up the transcript without delay and provide the court with a copy of the transcript so [appellant]'s objection may be ruled on in a timely manner." The record fails to reflect that appellant ever furnished a transcript to the trial court in relation to her objections, and no notice of filing of transcripts appears in the docket for G.G.'s case. Juv.R. 40(D)(3)(b)(iii) states, "The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause."

{¶ 61} Where a timely request has been made for findings of fact and conclusions of law, Juv.R. 40(D)(3)(b)(i) permits a party to file objections within 14 days after the filing of the findings of fact, indicating that "the time for filing objections begins to run when the magistrate files a decision that includes findings of fact and conclusions of law."

{¶ 62} Here, appellant filed her objections on the same day as her request for findings of fact. The record reflects that the magistrate's findings of fact and conclusions of law were issued on January 24, 2022, and that the trial court did not rule on appellant's objections until a week later, on January 31, 2022, as reflected by the entry journalized on February 1, 2022. On February 8, appellant again filed

objections, and the trial court ruled on these subsequent objections as well. These facts as established by the record fail to support appellant's claim that the trial court failed to conduct an independent review of the record when ruling on her objections.

{¶ 63} In regard to the lack of transcript, appellant contends that a transcript is only required when a party objects to a factual finding and she "had not specified that any objection was against a factual finding." However, a review of her objections reveals that she objected in large part to the court's factual findings, contending that they are not supported by sufficient evidence.

{¶ 64} On this record, we do not find merit to appellant's claims regarding the trial court "rubber stamping" the magistrate's decisions.[4]

{¶ 65} Appellant's fourth claim under her fifth assignment of error is that "there was no evidence presented that [her] home was an unsafe environment." We note that the physical nature itself of her home was not the issue in the case. As to an unsafe environment, the record demonstrates that appellant left children, who were then 13 years and nine years of age, home alone with an unidentified 15-year-old for several days. Appellant had been advised that because of decision-making, behavioral, and impulsivity issues S.H. had, she needed to be supervised. These facts more than adequately support a finding of an unsafe environment.

---

[4] We note that simply because a trial court adopted a magistrate's decision does not mean that the court failed to exercise independent judgment. *In re F.M.B.*, 4th Dist. Washington No. 10CA28, 2011-Ohio-5368, citing *State ex rel. Walton v. Adams*, 4th Dist. Scioto No. 98CA2617, 1999 Ohio App. LEXIS 3566 (July 23, 1999). Juv.R. 40(D)(4) allows the trial court to adopt the magistrate's decision if the court fully agrees with it. *Id.*, citing *In re Dunn*, 101 Ohio App.3d 1, 8, 654 N.E.2d 1303 (12th Dist.1995).

{¶ 66} Appellant's final claim in her fifth assignment of error is that the trial court allowed CCDCFS to dismiss the first complaint but then repeatedly referred to it in this case. The factual basis for both cases was the same, however. The sole reason for the dismissal of the first case was the inability to resolve it within the statutory time period as set forth in R.C. 2151.35(B)(1). The allegations in the first complaint were part and parcel of the allegations in the second complaint, and there was no error in referring to them.

{¶ 67} For the reasons set forth, appellant's fifth and sixth assignments of error are overruled.

{¶ 68} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR